IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| GULF HAULING & CONSTRUCTION, INC., et al., | : | |
| Plaintiffs, | : | |
| v. | : | CA 2:13-00083-C |
| QBE INSURANCE CORPORATION, et al., | : | |
| Defendants. | : | |

### MEMORANDUM OPINION AND ORDER

Now before the Court in this matter proceeding before the undersigned United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c) (*see* Docs. 14, 15) is a motion to remand (Doc. 11), filed by the plaintiffs on March 15, 2013, and joined by Defendants Crowley Cattle Company, Inc., Carl G. (Billy) Frye, Jeffrey G. Frye, and Tracy Frye on March 26, 2013 (*see* Doc. 16). The removing defendant, QBE Insurance Corporation, has filed responses to both (Docs. 17, 20); the proponents of remand have filed replies in support (Docs. 23, 26); and, on May 14, 2013, the Court conducted a hearing regarding remand (*see* Doc. 30). After consideration of the pleadings and the parties' presentations at the hearing, and for the reasons explained in this order, the motion to remand (Doc. 11) is **GRANTED**, and this matter is **REMANDED** to the Circuit Court of Hale County, Alabama.

### I. Background

On January 10, 2013, Gulf Hauling & Construction, Inc. ("Gulf Hauling"), Lamar Allen Harrison, and Gulf Farms, LLC (collectively, the "Gulf Parties") filed a six-count complaint in the Circuit Court of Hale County against QBE and two groups of other defendants—the "Crowley Cattle Parties" (the abovementioned Crowley Cattle

Company, Browne, and three Fryes) and the "Foundation Farms Parties" (Defendants Laird Cole, Henry Lee Cole, and Foundation Farms, LLC)—who had previously brought separate lawsuits against the Gulf Parties.  In regard to the two underlying lawsuits, the Crowley Cattle Parties sued the Gulf Parties in Hale County Circuit Court, the Foundation Farms Parties sued them in Dallas County Circuit Court, and the cases were ultimately consolidated in Hale County.  Although a *pro tanto* joint stipulation of dismissal of certain claims in regard to the suit brought by the Crowley Cattle Parties was filed on April 3, 2013 (*see* Doc. 27), the consolidated state-court action remains set for trial in July 2013.[1]

The first five counts of the Gulf Parties' complaint (the one removed to federal court) solely concern their insurer, QBE.[2]  The Gulf Parties contend that: QBE issued various Commercial General Liability and Commercial Umbrella policies to Gulf Hauling; QBE was duly and timely notified of the two suits against the Gulf Parties and the incidents allegedly underlying them; QBE is defending Gulf Hauling and Harrison in those suits under a reservation of rights to certain policies; QBE has intervened in the underlying lawsuits, seeking "to participate in discovery, for the purpose of denying its duty to indemnify [the Gulf Parties] for some or all of the claims asserted against [them]; and, "[a]s a result of QBE's tortious conduct . . . , [the Gulf Parties] have suffered damages and Lamar Harrison has suffered mental anguish and emotional distress." (Doc. 1-1, state-court compl., ¶¶ 15-20.)  The complaint's sixth count, asserted against all defendants, seeks a declaratory judgment concerning insurance coverage.

---

[1] And, importantly for determining this Court's subject-matter jurisdiction, at the time QBE removed this matter, all claims in the consolidated state-court actions were alive and well.

[2] Those counts are for: (I) bad faith; (II) breach of contract; (III) negligence/wantoness; (IV) misrepresentation; and (V) suppression.

2

Invoking jurisdiction pursuant to § 1332, and without obtaining the consent of its co-defendants, *see* 28 U.S.C. § 1446(b)(2)(A), QBE removed this matter on February 21, 2013. (*See generally* Doc. 1, notice of removal.) The plaintiffs are individual and corporate citizens of Alabama (*see id.*, ¶¶ 14-16), and QBE, a Pennsylvania corporation, asserts that the amount in controversy exceeds the jurisdictional minimum and, once the non-consenting defendants, individual and corporate citizens of either Alabama or Florida, are realigned as party plaintiffs, there is complete diversity and the unanimity rule is mooted. (*Id.*, ¶¶ 17-27.) The day after removing this matter, on February 22, 2013, QBE filed a motion to dismiss the first five counts of the complaint pursuant to Rule 12(b)(6). (Doc. 3; *see also* Doc. 4, brief in support).

## II.     Analysis

### A.     As the removing defendant, QBE must prove that this Court has subject-matter jurisdiction.

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court." *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411; *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by

statute, the right of removal is strictly construed to limit federal jurisdiction.") (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)); *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (a federal court is "obligat[ed] to narrowly construe removal statutes"; this obligation necessarily "requires that uncertainties be 'resolved in favor of remand'") (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994)).

Therefore, QBE must establish the propriety of removal under section 1441 and, for that reason, "bears the burden of establishing the existence of federal jurisdiction[,]" *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)), which requires that a defendant, one, establish complete diversity—that all plaintiffs are diverse from all defendants, *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998) (citation omitted)—and, two, show that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *see Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003).[3]

No parties dispute—and, moreover, the Court, through its independent review, is satisfied—that there is a sufficient amount in controversy. The parties' true dispute is whether the eight non-QBE defendants should be realigned as party plaintiffs, which is necessary for diversity jurisdiction to exist.

### B. In the context of removal, federalism concerns notwithstanding, this Court has a duty to "arrange the parties according to their sides in the dispute as determined by the principal purpose of the suit and the

---

[3] Further, "'[o]nly state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant.'" *City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). And "the removal statute forbids removal 'if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'" *Id.* (quoting 28 U.S.C. § 1441(b)(2)).

**primary and controlling matter in dispute."**

"It is [the] duty [of all] federal courts, to look beyond the pleadings and arrange the parties according to their sides in the dispute." *Northbrook Nat'l Ins. Co. v. Brewer*, 493 U.S. 6, 16 n.5 (1989) (citations and internal quotation marks omitted). But, as the Gulf Parties point out (*see* Doc. 11 at 5-6), the undersigned has observed that some courts—at least some in the Fifth Circuit—"have seriously questioned whether the procedural mechanism of 'realignment' can be used to support removal at all." *Karp v. American Law Enforcement Network, LLC*, No. CA 11–0449–CG–C, 2011 WL 6963254, at *7 (S.D. Ala. Nov. 18, 2011) (quoting *Salge v. Buchanan*, C.A. No. C-07-212, 2007 WL 1521738, at *4 n.5 (S.D. Tex. May 24, 2007)), *report & recommendation adopted*, 2012 WL 38161 (S.D. Ala. Jan. 6, 2012).[4] Fortunately, the Eleventh Circuit recently gave its district

---

[4] *Karp* and *Salge* involved removal attempts by third-parties—a counter-defendant, in *Karp*, and a third-party defendant, in *Salge*—who seemed to recognize that realignment, if allowed, would "cure [the] defect in [their] removal" and "avoid the statutory limit [even as extended by some courts] on the parties able to remove." *Huntsman Corp. v. International Risk Ins. Co.*, Civil Action No. H-08-1542, 2008 WL 4453170, at *7 (S.D. Tex. Sept. 26, 2008). But, as Judge Jack points out in *Salge*, skepticism concerning the use of realignment to create jurisdiction that would not otherwise exist may reach broader than third-party practice. Indeed, "the major Supreme Court and Fifth Circuit cases addressing realignment involve the question of whether suits originally filed in federal court (rather than removed) could proceed under diversity jurisdiction." 2007 WL 1521738, at *4 n.5 (citing *City of Indianapolis v. Chase Nat'l Bank of New York*, 314 U.S. 63 (1941); *Zurn Induss., Inc. v. Acton Constr. Co., Inc.*, 847 F.2d 234 (5th Cir. 1988); *Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173 (5th Cir. 1984)) (other citations omitted); *but see Lott v. Scottsdale Ins. Co.*, 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011) ("Put simply, it is settled that where, as here, there is no diversity of citizenship based on the initial alignment of the parties in an action commenced in state court, a defendant may nonetheless remove the case to federal court and request realignment of the parties to produce the requisite diversity. If the motion to realign is granted and the other requirements for diversity jurisdiction are met, the case may proceed in federal court. If the motion to realign is denied and hence the requisite diversity does not exist, the case must be remanded to state court. The seldom stated, but sensible rationale for these decisions is that jurisdictional consequences should not be determined until the parties are properly aligned according to their interests, and this principle applies equally to cases that are originally filed in federal court as it does to cases that are removed from state court.") (collecting authority); *contra cf. Huntsman Corp.*, 2008 WL 4453170, at *7 ("[T]he trend in [at least the Fifth C]ircuit disapproves of using realignment after removal to cure a defect in removal jurisdiction. . . . Using realignment both to avoid the statutory limit on the parties able to remove and the jurisdictional limit on removal is a far cry from resolving all doubts against removal.") (citation omitted).

courts guidance as to how to balance these "two different interests" in the context of removal jurisdiction. *See City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012) ("Weighing the propriety of the district court's decision to realign the parties and deny Vestavia Hills's motion to remand requires us to consider two different interests."):

> On the one hand, because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court. On the other hand, there exists also a strong federal preference to align the parties in line with their interests in the litigation. We begin with the proposition, voiced by the Supreme Court that, for the purpose of removal, the federal law determines who is plaintiff and who is defendant. It is a question of the construction of the federal statute on removal, and not the state statute. The latter's procedural provisions cannot control the privilege of removal granted by the federal statute. Accordingly, what [state law has] to say about whether [a party] is a defendant or a plaintiff is immaterial, and, further, state legislatures apparently cannot craft a statute in this manner to render certain causes of action "unremovable."
>
> We next note that federal courts are required to realign the parties in an action to reflect their interests in the litigation. The parties themselves cannot confer diversity jurisdiction upon the federal courts by their own designation of plaintiffs and defendants. This Court concludes that the converse of this principle—that parties cannot avoid diversity by their designation of the parties—is also true. Rather it is the duty of the lower federal courts to look beyond the pleadings and arrange the parties according to their sides in the dispute as determined by the principal purpose of the suit and the primary and controlling matter in dispute. Where the parties' interests are the same, we have held that those parties must be aligned together and have reversed a district court's failure to do so, even where the parties' interests were in opposition outside of the issues raised in the subject action.

*Id.* at 1313-14 (footnote and internal citations and quotation marks omitted and punctuation modified); *accord Cromwell v. Admiral Ins. Co.*, Civil Action No. 11–0155–CG–N, 2011 WL 2670098, at *4 (S.D. Ala. June 21, 2011), *report and recommendation adopted*, 2011 WL 2689356 (S.D. Ala. July 7, 2011).[5]

---

[5] In *Cromwell*, facing a motion to remand and a motion to realign the parties, this

The facts underlying *Vestavia Hills* were: after the City of Vestavia Hills obtained a state-court judgment against Cameron Development (and after Cameron's insurer, General Fidelity, denied Cameron's claim for coverage), the City filed an action in state court against Cameron (an Alabama citizen) and General Fidelity (not a citizen of Alabama). General Fidelity removed the action to federal court; Judge Proctor determined that, because their interests were the same, Cameron should be realigned as a plaintiff with the City; and the Eleventh Circuit affirmed that decision:

> Having reviewed the single-count complaint, it is clear that Vestavia Hills did not seek any relief from Cameron. *Cf. Duffey v. Wheeler*, 820 F.2d 1161 (11th Cir. 1987). There no longer is any dispute between Vestavia Hills and Cameron, and the only thing that Cameron could want out of this case is for Vestavia Hills to win. Obviously, the two parties' interests are identical or at least materially so. As was noted by the Seventh Circuit in *Home Insurance Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998), in determining subject matter jurisdiction on the basis of diversity, "the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party."

*Id.* at 1314 (footnote omitted).

Similarly, in *Cromwell*, the action removed to this Court was initiated after a state-court judgment was obtained. *See* 2011 WL 2670098, at *6. There, the $3.5 million

---

Court stated,

> In addressing the proper alignment of the parties, the court must consider "the principal purpose of the suit and the primary and controlling matter in dispute." *Indemnity Ins. Co. of North America v. First Nat. Bank at Winter Park, Fla.*, 351 F.2d 519, 522 (5th Cir. 1965) (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 72 (1965)). "It is our duty . . . to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' . . . Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest,' . . . exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit,' . . . and the 'primary and controlling matter in dispute.'" *City of Indianapolis*, at 70 (citations omitted); *Hamer v. New York Ry.*, 244 U.S. 266 (1917) (parties must be realigned for diversity purposes according to their ultimate interests in the outcome of the case).

*Id.*

judgment exceeded the $1 million policy limit; in addition, the policy was "a 'wasting' policy under which the policy limits are reduced by the insurer's defense costs." *Id.* And Judge Nelson concluded that

> the primary thrust of the current litigation will be the issue of the amount [and potentially the existence] of coverage.  Despite plaintiff's claim that defendant SafetyNet takes an adverse position to the plaintiff because it seeks continued defense [and thus continued expenses reducing the available policy proceeds] by Admiral in the state court litigation, it is clear that SafetyNet's principal interest in this suit is in having Admiral pay as large a portion of the judgment as possible, thereby reducing the unsatisfied remainder of the judgment for which SafetyNet would remain liable.  No other substantive issue has been demonstrated to be involved in this action.  Based on the record, the undersigned concludes that the interests of SafetyNet are properly aligned in this litigation with those of the plaintiff.

*Id.*

In cases like *Vestavia Hills* and *Cromwell*, where a state-court judgment has already been entered, it is easy to honor the maxim that, "in determining subject matter jurisdiction on the basis of diversity, 'the normal alignment of parties in a suit seeking a declaratory judgment of non-coverage is Insurer versus Insured and Injured Party.'" *Vestavia Hills*, 676 F.3d at 1314 (quoting *Home Ins. Co. of Ill.*, 154 F.3d at 741).

> This is so because any finding that the insurer owes a duty to indemnify an insured mutually benefits the insured party and the injured party.  The insured party is relieved of having to pay the judgment out of his own pocket, at least to the extent of the policy limit.  At the same time, the injured party is assured that he will be able to collect at least a portion of the judgment owed him.

*Grinnell Select Ins. Co. v. Glodo*, Nos. 08–cv–891–JPG, 09–cv–004–JPG, 2009 WL 455126, at *2 (S.D. Ill. Feb. 23, 2009) (also citing *Home Ins. Co. of Ill.*, 154 F.3d at 741)[6]; *compare, e.g.,*

---

[6] There, the court further noted,

What is true in the usual case, is true here.  The singular interest of both [Insured] Bria and [Injured] Keown is in obtaining a declaration that [Insurer] Grinnell must pay at least part of the judgment that Bria owes Keown.  The fact that the judgment exceeds the policy limits does nothing to diminish this fact,

*Porter v. Crumpton & Assocs., LLC*, 862 F. Supp. 2d 1303, 1307-08 (M.D. Ala. 2012) ("The Porters' interests as the judgment creditor align directly with those of Crumpton & Associates, the judgment debtor, because both parties want American Guarantee to pay the judgment.  This situation mirrors exactly the circumstances in *Vestavia Hills*, where the interests of the judgment creditor and judgment debtor aligned against the insurer.  In other words, it would make little sense to stick Crumpton & Associates on the same side of the 'v' as American Guarantee when determining whether there exists complete diversity between adverse parties."), *with Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, No. 11–80272–CIV, 2011 WL 3419633, at *3 & n.2 (S.D. Fla. Aug. 4, 2011) ("[U]nder the facts of this case, [Injured] McTigue's interests can be said to be aligned with [Insured] Wheele's efforts to obtain indemnity from Markel and Vanliner, because if Wheeler's is successful, it will ensure that McTigue's judgment will be paid from insurance proceeds. . . . [Further, t]he fact Wheeler's interests were adverse to McTigue's interests in the underlying action is not relevant to the determination as to whether McTigue is properly aligned as a defendant in this case.") (citing, *inter alia*, *Federal Ins. Co. v. Bill Harbet Constr. Co.*, 82 F. Supp. 2d 1331, 1334 (S.D. Ala. 1999) (Vollmer, J.)).  Here, however, no state-court judgment exists.  And while some courts have found it proper to realign an underlying state-action plaintiff/federal defendant as a federal plaintiff in a pure declaratory judgment action absent a judgment in the underlying case, *see, e.g., Brave Ventures, LLC v. Ambrester*, 854 F. Supp. 2d 356, 358 (E.D.

---

> nor to make Bria's interests in the instant case adverse to Keown's.  And, while it is true that Bria and Keown had adverse interests in the underlying case, ***that case has proceeded to judgment, at which point their legal adversity came to an end***.  Therefore, the Court will realign the parties accordingly.

*Id.* (emphasis added).

Va. 2012),[7] this action compels a different result.

First, it is clear that the "principal purpose" of the Gulf Parties' lawsuit is a frontal attack on their insurer, QBE.[8] In addition to asserting claims for bad faith, breach of contract, negligence and wantonness, misrepresentation, and suppression against QBE (solely), the complaint includes a declaratory judgment count. The inclusion of that count required the Gulf Parties name the Crowley Cattle Parties and the Foundation Farms Parties as parties to their lawsuit. *See Andalusia Enters., Inc. v. Evanston Ins. Co.*, 487 F. Supp. 2d 1290, 1293-94 (N.D. Ala. 2007) ("[A]n alleged tort victim[ has] an interest, actual or theoretical, in whatever finding will ultimately be made on the coverage question, whether against [the plaintiffs] or in their favor. [He is] therefore an indispensable party in the state court action pursuant to § 6–6–227[ of

---

[7] There, the court granted a motion to realign:

Examining the alleged circumstances of this matter, it seems clear that Ambrester is not properly aligned as a defendant in this case. The primary issue addressed in the complaint is Mount Vernon's duty to provide coverage for the subject incident. Ambrester is not a party to the insurance agreement and has no potential duties under the insurance policy itself. As a plaintiff in a separate tort suit in state court, his sole interest in this action would be maximizing his potential recovery, and therefore establishing coverage under any and all insurance policies that could potentially compensate him, *if* he prevails in his lawsuit.

*Id.* (internal citations omitted and emphasis added).

[8] "The determination of the 'primary and controlling matter in dispute' . . . is to be determined by plaintiff's principal purpose for filing its suit." *Zurn Indus., Inc. v. Acton Constr. Co., Inc.*, 847 F.2d 234, 237 (5th Cir. 1988) (cited in *Bill Harbet Constr. Co.*, 82 F. Supp. 2d at 1337 n.5); *see also Builders Mut. Ins. Co. v. Dragas Mgmt. Corp.*, 497 Fed. App'x 313, 316 (4th Cir. Nov. 20, 2012) (per curiam) ("To determine when to realign parties, we apply the two-step 'principal purpose' test. First, we determine the primary issue in the controversy by considering the 'plaintiff's principal purpose for filing its suit.' *Palisades Collections LLC v. Shorts*, 552 F.3d 327, 337 (4th Cir. 2008) (internal quotation marks omitted). Second, 'we align the parties according to their positions with respect to the primary issue.' Id. If the alignment differs from that in plaintiff's complaint, we look to whether diversity jurisdiction still exists.") (internal citation omitted).

Alabama's Declaratory Judgment Act].").[9]

Against this backdrop the Court must decide whether to realign the parties. And, in order to determine whether the non-QBE defendants should be realigned as party-plaintiffs, the Court must examine the relief requested pursuant to the only count concerning those defendants, the declaratory judgment count. Among other things, there, the Gulf Parties request an order and judgment declaring that (1) their applicable QBE "insurance policies provide coverage for the underlying claims and lawsuits against [them]"; (2) "[e]ach of the [Gulf Parties] is an insured under the insurance policies in question"; and (3) "QBE owes a duty to indemnify the [Gulf Parties] for any judgment which may be entered against [them] in the underlying lawsuits regardless of policy limits." (Doc. 1-1 at 9.) While the last request listed may be premature,[10] none of these requests appear to be adverse to the interests of the Crowley Cattle Parties and the Foundation Farms Parties. However, the Gulf Parties' request for an order and

---

[9] Of course, this requirement of Alabama's declaratory judgment act does not itself prevent removal. *See, e.g., Vestavia Hills*, 676 F.3d at 1313 ("[F]or the purpose of removal, the federal law determines who is plaintiff and who is defendant. It is a question of the construction of the federal statute on removal, and not the state statute. The latter's procedural provisions cannot control the privilege of removal granted by the federal statute.") (quoting *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954)).

[10] "There is abundant support in the case law for the proposition that 'an insurer's duty to indemnify is not ripe for adjudication in a declaratory judgment action until the insured is in fact held liable in the underlying suit.'" *W.G. Yates & Sons Constr. Co. v. Zurich Am. Ins. Co.*, Civil Action No. 06-0803-WS-B, 2008 WL 161921, at *6-7 (S.D. Ala. Jan. 8, 2008) (Steele, J.) (quoting *Assurance Co. of Am. v. Legendary Home Builders, Inc.*, 305 F. Supp. 2d 1266, 1270 (S.D. Ala. 2003)) (collecting authority and further determining: "In light of the foregoing authorities, the Court is of the opinion that it would be inappropriate at this time to enter a declaration as to Zurich's duty to indemnify Yates in the Guerrero Action. At present, it is purely a matter of speculation and hypothesis as to whether judgment will ever be entered against Yates in those state-court proceedings. Entry of a ruling now as to whether Zurich is responsible for footing the bill if the Guerrero Action culminates in a monetary judgment against Yates would run contrary to fundamental notions of judicial economy, wise judicial administration, and prudent allocation of scarce judicial resources. Accordingly, in the exercise of the Court's sound discretion, Yates' claims for a declaratory judgment on the question of Zurich's duty to indemnify are dismissed without prejudice.").

judgment declaring "[t]hat QBE has a continuing duty to defend the [Gulf Parties] in the underlying lawsuits"—lawsuits brought by the Crowley Cattle Parties and the Foundation Farms Parties *against* the Gulf Parties—does not align with the interests of the non-QBE defendants. Further, because no state-court judgment has been entered (or, more properly, had been entered before this case was removed), making any duty to indemnify purely speculative and, accordingly, not ripe for consideration by this Court, the principal insurance coverage issue—if the Court accepts QBE's position that the principal purpose of the Gulf Parties' lawsuit is solely coverage—is QBE's duty to defend the Gulf Parties (or some of those parties) in the still active underlying litigation. Therefore, again accepting QBE's view of this lawsuit, the non-QBE defendants are adverse to the Gulf Parties as to the principal purpose of this lawsuit.

For example, in *Preferred Chiropractic, LLC v. Hartford Casualty Insurance Co.*, No. 10–cv–972–DRH, 2011 WL 2149091 (S.D. Ill. May 31, 2011), the court began with the same maxim, provided by the Seventh Circuit and used by the Eleventh Circuit in *Vestavia Hills*—"[t]he 'normal alignment of parties in suits seeking a declaratory judgment of non-coverage is Insurer vs. Insured and Injured Party[,]'" *id.* at *3 (quoting *Home Ins. Co. of Ill.*, 154 F.3d at 741). But, the court continued,

> [w]hile this alignment is generally true for declaratory judgments seeking indemnity, a duty to defend is different. In Illinois, a duty to defend is distinct and separate from a duty to indemnify. The issue of indemnification is not ripe until the underlying litigation is terminated— until there has been an actual judgment that requires payment from the insured or its insurer to the plaintiff. In the actions underlying declaratory judgment actions regarding duties to defend, the insured and injured often have adverse interests—an adversity which does not end until after a judgment.

*Id.* (citations omitted); *compare id.*, *with W.G. Yates & Sons Constr. Co. v. Zurich Am. Ins. Co.*, Civil Action No. 06-0803-WS-B, 2008 WL 161921, at *6 (S.D. Ala. Jan. 8, 2008) (Steele,

12

J.) ("Under Alabama law, an insurer's duty to indemnify and its duty to defend the insured are distinct obligations. *See Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1063 (Ala. 2003) ("Liability insurance coverage includes two separate duties: (1) the duty to defend; and (2) the duty to indemnify."). Those duties must be analyzed separately for purposes of determining an insurer's obligations to its insured.")

The court in *Preferred Chiropractic* then concluded that realignment was not proper there:

> Plaintiff Chiropractic and defendant Weiss have adverse interests in the underlying action where they are adverse parties and Weiss alleges counterclaims against Chiropractic. This adversity will not end until judgment has been reached in the underlying proceeding. Hartford's assertion that Weiss has an interest in Chiropractic obtaining funds from Hartford with which to pay a prospective judgment against Chiropractic conflates a duty to defend with a duty to indemnify. Chiropractic is not seeking indemnification from Hartford with which to satisfy a judgment in favor of Weiss—there is no judgment to satisfy. Chiropractic is seeking a defense. The point of substantial antagonism between Chiropractic and Weiss is their opposition in the underlying suit ***and Chiropractic's attempt to obtain a defense from Hartford with which to ultimately defeat Weiss in the underlying action***. As such, the parties in the instant declaratory judgment action are properly aligned-defendant Weiss is properly considered a defendant, aligned with defendant Hartford and against plaintiff Chiropractic.

Id. at *3 (emphasis added).

This lack of a state-court judgment coupled with a request that the insurer defend its insured in the still-pending underlying action was also why Judge Proctor, in *Smith v. Catlin Insurance Co.*, Case No.: 7-12-CV-4070-RDP (N.D. Ala. Feb. 23, 2013), refused to realign an underlying plaintiff (Burks) with the federal declaratory judgment action plaintiffs, distinguishing that decision from his decision in *Vestavia Hills* to realign Cameron Development as a plaintiff, a decision affirmed by the Eleventh Circuit:

> The main fact distinguishing this case from the *Vestavia Hills* case is that

13

> here there is no final judgment. Burks is still prosecuting her claims in the state court action. In contrast, in *Vestavia Hills*, an underlying state court judgment has already been entered against one of the defendants, Cameron Development. Thus, Cameron Development, a nominal defendant, and the City, the plaintiff in the underlying action in *Vestavia Hills*, had a virtually identical interest in requiring the insurance company, the other defendant in that case, to pay the judgment. *Id.* at 1314. ***That is, there was no issue concerning a duty to defend in* Vestavia Hills—*the case had already been tried and a final judgment entered.*** Here, Burks has not yet obtained a judgment. And as Burks makes clear . . . , she has no interest in the insurer defendants providing Plaintiffs in this case with a defense to her claims against them in the underlying case. Thus, this case is readily distinguishable from *Vestavia Hills*, and Burks's interest cannot be said to be aligned with the interests of Plaintiffs in this case.

(N.D. Ala. Case No.: 7-12-CV-4070-RDP, Doc. 25, order granting motion to remand, at 2-3 (emphasis added); *see also id.* at 3 n.1 ("In fact, although Burks may, eventually, desire that the insurer Defendant indemnify Plaintiffs for any judgment she might obtain against them, at least at present, she prefers that Plaintiffs present no defense to her claims, whether provided by the insurer Defendant or otherwise.").)[11]

### III.    Conclusion

Because the interests of the Crowley Cattle Parties and the Foundation Farms Parties are in opposition to the interests of the Gulf Parties as to the current primary purpose of this litigation that affects all parties—as demonstrated by the only declaratory relief the Gulf Parties request in their complaint that is ripe for consideration—the Court cannot realign the Crowley Cattle Parties and the Foundation Farms Parties as plaintiffs in this dispute. Thus, complete diversity is lacking, and this

---

[11] Like the Gulf Parties here, in *Smith*, the declaratory judgment plaintiffs were also being defended in the underlying action under a reservation of rights. (*See* N.D. Ala. Case No.: 7-12-CV-4070-RDP, Doc. 1, notice of removal, at 95-104 (May 17, 2012 Letter from counsel for Catlin Insurance Company, Inc. ("Therefore, the company has determined that it will provide a defense to Mr. Smith and Dixie Air Service, Inc., reserving all of its rights under the policy contract. . . ."); Oct. 8, 2012 Letter from Cincinnati Insurance Company ("Without waiving any rights under its reservation of rights, Cincinnati has retained the firm of Scott Tyra . . . to defend Dixie Air Services, Inc. and Danny Smith. . . .")).)

Court does not possess subject-matter jurisdiction pursuant to 28 U.S.C. § 1332. The motion to remand (Doc. 11) is therefore **GRANTED**, and the Clerk is **DIRECTED** to **REMAND** this matter to the Circuit Court of Hale County, Alabama and **CLOSE** this case.

    **DONE and ORDERED** this the 20th day of May, 2013.

                                      s/WILLIAM E. CASSADY
                                      **UNITED STATES MAGISTRATE JUDGE**